# In the United States Court of Federal Claims

No. 14-497C

(E-Filed:  November 28, 2017)

| | |
|---|---|
| JOSE MENDEZ, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Motion for Reconsideration, RCFC 59 & RCFC 60; Claim Accrual; Accrual Suspension Rule; Permissive Administrative Remedies. |

Kenneth F. McCallion, New York, NY, for plaintiff.  Kristian K. Larsen, New York, NY, of counsel.

Alexander O. Canizares, Trial Attorney, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION

CAMPBELL-SMITH, Judge.

Before the court is plaintiff's motion for reconsideration of the judgment dismissing his suit.  ECF No. 83.  Plaintiff's motion is founded on Rules 59(e) and 60(b) of the Rules of the United States Court of Federal Claims (RCFC).  Because no valid ground for vacating or amending the court's judgment has been proffered, plaintiff's motion is **DENIED**.[1]

---

[1]   Defendant filed a Notice of Supplemental Authority on November 15, 2017, ECF No. 93, which the court did not find to be relevant to the issues presented here on reconsideration.  For this reason, the Notice is not discussed further in this opinion.

I.      Background

Plaintiff seeks compensation for work performed as a confidential informant and his suit is founded on allegations of the existence of a contract for the provision of those services.  According to plaintiff, the United States agreed to "make a good faith best efforts [sic] to compensate Plaintiff for his services and assistance to the Government." Am. Compl., ECF No. 57 ¶ 79.  Plaintiff contends that the government breached this "express oral agreement," id. ¶¶ 79, 83, or, in the alternative, that the government breached an implied-in-fact contract on the same subject, id. ¶ 91.  Familiarity with the court's two prior opinions issued in this case, Mendez v. United States, 121 Fed. Cl. 370 (2015) (Mendez I), and Mendez v. United States, 132 Fed. Cl. 55 (2017) (Mendez II), is presumed.

In Mendez II, the court found that any such breach of contract would have occurred when an Assistant United States Attorney (AUSA) bluntly told plaintiff's counsel, in an email, that no such agreement for confidential informant services existed between plaintiff and the United States.  That email was sent on January 25, 2006. Because this suit was filed on June 10, 2014, more than eight years later, the court dismissed the action as untimely pursuant to 28 U.S.C. § 2501 (2012).

Plaintiff timely raised three grounds for reconsideration in his motion for reconsideration/relief from judgment.  ECF No. 83.  First, plaintiff disagrees that the 2006 AUSA email triggered claim accrual, characterizing the email as, at most, an anticipatory repudiation of contract performance (rather than a contract breach).  Id. at 25-31.  Second, plaintiff argues that even if the 2006 AUSA email would otherwise suffice to trigger claim accrual, the accrual suspension rule, discussed infra, applies in these circumstances.  Id. at 31-33.  Third, plaintiff argues that the ongoing exhaustion of administrative remedies prevented the accrual of his claim in 2006.  Id. at 33-35.  In his reply brief, plaintiff raised a fourth ground for reconsideration -- that the AUSA did not possess the authority to conclusively refute the existence of a confidential informant services contract with the United States.[2]  Pl.'s Reply, ECF No. 92 at 15-18.

II.     Legal Standards

    A.      RCFC 59

---

[2]     The authority argument is not properly before the court.  See, e.g., Arakaki v. United States, 62 Fed. Cl. 244, 246 n.9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete." (citing Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002); Cubic Def. Sys., Inc. v. United States, 45 Fed. Cl. 450, 467 (1999))).

A motion for reconsideration is permitted under RCFC 59, which provides that such a motion may be granted for any reason for which a new trial has been granted in an action at law, or for which a rehearing has been granted in a suit in equity, in the courts of the United States.  See RCFC 59(a)(1).  The decision whether to grant reconsideration pursuant to RCFC 59 lies largely within the discretion of the court.  Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).  However, a motion for reconsideration will be granted only upon a demonstration of a "'manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'"  Bishop v. United States, 26 Cl. Ct. 281, 286 (1992) (quoting Circle K Corp. v. United States, 23 Cl. Ct. 659, 664-65 (1991)).  The movant must show that: (a) an intervening change in the controlling law has occurred since the original decision; (b) evidence not previously available has become available; or (c) the motion is necessary to prevent manifest injustice.  Id.

   B.    RCFC 60

   A grant of relief from judgment under RCFC 60(b) is within the discretion of the trial court.  Sioux Tribe of Indians v. United States, 862 F.2d 275, 279 (Fed. Cir. 1988) (citing United States v. Atkinson, 748 F.2d 659, 660 (Fed. Cir. 1984)).  It is important to note that a motion under Rule 60(b) is not a permissible substitute for an appeal to the United States Court of Appeals for the Federal Circuit, this court's appellate forum.  See Patton v. Sec'y of Dep't of Health & Human Servs., 25 F.3d 1021, 1028 (Fed. Cir. 1994) (acknowledging "the settled principle that [RCFC 60(b)] is not to be used as a substitute for an appeal" (citing Ackermann v. United States, 340 U.S. 193, 198-99 (1950))).  Relief under Rule 60(b)(6), in particular, is limited to extraordinary circumstances.  Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988) (citations omitted).

III.   Discussion

   A.    Not an Anticipatory Repudiation

   As the court stated in Mendez II, plaintiff knew all of the necessary facts to file his claim for breach of contract when he received the 2006 AUSA email.  Plaintiff argues, however, that the email was, at most, an anticipatory repudiation of the agreement, citing Franconia Associates v. United States, 536 U.S. 129, 142-48 (2002), and as such could not have triggered the statute of limitations.  ECF No. 83 at 26-31.  The court disagrees that the 2006 AUSA email can be compared to the statutory enactment discussed in Franconia.  There is no equivalence between the anticipatory repudiation of government contract performance due years later, a repudiation which was embodied in a statute, and the curt denial of the existence of a confidential informant services contract by this AUSA.  Franconia does not control here.

   The 2006 AUSA email was a specific communication from a government official that a claimant would receive nothing, in lieu of an anticipated amount for contract

services.  This is an alleged breach of contract of the type discussed in Fattore v. United States, 312 F.2d 797 (Ct. Cl. 1963).  In that suit, the Fattores expected to receive a certain amount in moving expenses as part of their agreement to vacate and sell land to the United States military, but they received a lower reimbursement and filed suit to recover the difference.  Id. at 798-99.  The Fattores received a voucher in February 1955, stating what the government would pay for moving expenses, and a Treasury check in March 1955, for the amount stated in the voucher.  The claim accrual question turned on whether their claim accrued in February, when they received the voucher, or in March, when they received the check.

Because their claim accrued at the time the government informed them (in February) of what they would later receive (in March), their suit, filed six years later in March 1961, was untimely and dismissed.  Id. at 799-800.  Thus, Fattore stands for the proposition that the "date the [government] had made a final determination of the amount it considered due to plaintiffs" was the date the plaintiffs' claim accrued.  Id. at 800.  The voucher in Fattore is the equivalent of the 2006 AUSA email in this case, which informed plaintiff that he would get no compensation in return for any confidential informant services he had provided.  Plaintiff's claim accrued in 2006 and was untimely filed in 2014 in this court.

As defendant argues, the 2006 AUSA email was -- at that time -- a "present" breach of contract, if, indeed, a contract for confidential informant services had been formed between plaintiff and the United States; it was not an anticipatory repudiation of future government contract performance.  See Def.'s Resp., ECF No. 89 at 4-5 (distinguishing the "present breach" from an anticipatory repudiation).  Plaintiff had fully performed his part of any such agreement, and the 2006 AUSA email was a clear indication that the government was refusing to perform commensurate "good faith best efforts to compensate Plaintiff for his services and assistance to the Government."  ECF No. 57 ¶ 79.  Thus, any claim for breach of contract pursuant to the alleged agreement accrued in 2006.

An accrual analysis similar to the one the court employs here was presented in Steel Improvement & Forge Co. v. United States, 355 F.2d 627 (Ct. Cl. 1966).  In the aftermath of a terminated government contract, a subcontractor, Steel Improvement, was left with an inventory of components it had forged that were no longer needed by either the prime contractor or the government.  Id. at 629.  A termination claim was processed, but government payments on Steel Improvement's portion of the termination claim never reached Steel Improvement due to a bankruptcy affecting the prime contractor.  Steel Improvement sought relief directly from the government, to no avail.  Id. at 630.  Steel Improvement eventually filed suit in the Court of Claims, asserting that the subcontractor had entered into either an express or implied contract to settle its termination claim directly with the government.

4

Unfortunately, Steel Improvement waited to file suit more than six years from the time it had performed its obligations under the alleged termination settlement agreement. Id. According to Steel Improvement, it had shipped the components to a naval depot in return for a fixed-price termination settlement. The subcontractor's full performance of the alleged termination settlement contract triggered claim accrual:

> In the instant case plaintiff contends that an express contract was created when defendant directed plaintiff to ship the termination inventory. If an express contract had been created, then plaintiff completely performed its obligations under the contract at the time of the shipment (October 6, 1954). Since this suit was not filed until more than six years after October 6, 1954, plaintiff's claim is time barred. The same logic and rationale holds for an implied contract. If any contract could be implied, as plaintiff contends, by the totality of the actions of the parties, then again, plaintiff had completely performed its part of the implied bargain on the date of shipment of the materials (October 6, 1954). It was at that time that any cause of action plaintiff might have had on an implied contract accrued. Plaintiff is, therefore, also barred by the statute of limitations on its implied contract theory.

Id.

Here, plaintiff had fully performed any confidential informant services before 2006. According to defendant, plaintiff's participation in criminal proceedings did not extend beyond a 2002 trial, ECF No. 89 at 5, and this assertion is consistent with the factual allegations in plaintiff's amended complaint, ECF No. 57 at 11-14. The court does not determine the precise date that plaintiff's confidential informant services concluded. Rather, following Steel Improvement, the court finds that plaintiff's claim accrued no later than 2006, and that this suit was untimely filed.

B.    No Accrual Suspension

Plaintiff relies on the accrual suspension rule in an attempt to avoid the application of this court's six-year statute of limitations. ECF No. 83 at 31-33; Pl.'s Reply, ECF No. 92 at 10-15. According to this rule, claim accrual may be "suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." Martinez v. United States, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc) (citations omitted). Plaintiff argues that because he and his attorney were getting mixed signals from various government actors before and after receiving the 2006 AUSA email, he did not know, nor should he have known, that his claim for breach of contract existed in 2006.

As defendant notes, the accrual suspension rule is strictly and narrowly applied. See Martinez, 333 F.3d at 1319. To benefit from the rule, plaintiff must show either that

5

his claim was inherently unknowable in 2006 or that the government concealed its contract breach from him at that time.  E.g., Banks v. United States, 741 F.3d 1268, 1280 (Fed. Cir. 2014) (citing Young v. United States, 529 F.3d 1380, 1384 (Fed. Cir. 2008)).  The court has given due consideration to all of the facts alleged in plaintiff's motion and his reply brief.  None of the alleged facts support a finding that plaintiff's breach of contract claim was inherently unknowable in 2006, or that the government concealed its breach from plaintiff in 2006.  The 2006 AUSA email clearly informed plaintiff of the government's breach of the alleged contract, and plaintiff's breach claim accrued at that time.

C.      Pursuit of Administrative Remedies Did Not Delay Claim Accrual

Plaintiff, relying on Crown Coat Front Co. v. United States, 386 U.S. 503 (1967) and Nager Electric Co. v. United States, 368 F.2d 847 (Ct. Cl. 1966), asserts that his breach claim did not accrue until a final administrative decision denying him compensation for confidential informant services was rendered in 2013.  ECF No. 83 at 33-35.  Neither of these cases, however, is of any assistance to plaintiff.  The pursuit of administrative remedies only delays claim accrual when those remedies are mandatory prerequisites to suit.  See, e.g., Martinez, 333 F.3d at 1304 ("As a general matter, if a dispute is subject to mandatory administrative proceedings, the plaintiff's claim does not accrue until the conclusion of those proceedings." (citing Crown Coat, 386 U.S. at 511; Lins v. United States, 688 F.2d 784, 786 (Ct. Cl. 1982); Nager, 368 F.2d at 853)).  If, on the other hand, permissive administrative remedies are sought, those proceedings have no effect on claim accrual:

> [I]n Tucker Act suits, a plaintiff is not required to exhaust a permissive administrative remedy before bringing suit.  As a corollary of that rule, the court has held that a plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy.

Id. (citations omitted).

This suit was brought under the Tucker Act, under 28 U.S.C. § 1491 (2012), ECF No. 57 ¶ 1, and seeks damages for breach of contract, id. at 23-25.  Plaintiff has not pointed to a mandatory administrative procedure that was a prerequisite to this suit.  As defendant notes, the exhaustion of permissive administrative remedies, such as those pursued by plaintiff, has no effect on claim accrual.  ECF No. 89 at 7.  The administrative procedures noted in plaintiff's motion, ECF No. 83 at 35, were not prerequisites to the filing of a breach of contract suit in this court and, thus, did not delay the accrual of plaintiff's claim.  See, e.g., Steel Improvement, 355 F.2d at 631 ("It is only when

pursuance of administrative remedies is a prerequisite to suit that the statute of limitations is suspended or tolled by such pursuance.") (citation omitted).

IV.     Conclusion

Having considered all of plaintiff's arguments for reconsideration and relief from judgment, the court finds no error of law, mistake of fact, or extraordinary circumstance which would permit the court to vacate or amend its judgment entered May 4, 2017. Accordingly, plaintiff's motion for reconsideration, ECF No. 83, is **DENIED**.

IT IS SO ORDERED.

s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge